UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TIMOTHY T. WILCOX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00313-JDL |
| | ) | |
| | ) | |
| RANDALL LIBERTY, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

In this action, Petitioner Timothy T. Wilcox seeks relief pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 1.) Following a jury trial in March 1996, Petitioner was convicted of the following crimes involving three victims in three separate incidents: two counts of kidnapping, 17-A M.R.S. § 301 (Class A); eight counts of gross sexual assault, 17-A M.R.S. § 253 (Class A); two counts of robbery, 17-A M.R.S. § 651 (Class A); and one count of unlawful sexual contact, 17-A M.R.S. § 255 (Class C). (*State v. Wilcox*, No. CR-95-881 (Me. Super. Ct., Cumberland Cty., Oct. 18, 1996), Docket Record at 3, Judgment and Commitment at 1.)[1] The court sentenced Petitioner to consecutive and concurrent terms of imprisonment totaling 49 years. (Docket Record at 3; Judgment and Commitment at 1.)

Petitioner's section 2254 petition follows the denial of a second state court petition that was "triggered by a May 2015 letter from the Department of Justice stating that a

---

[1] The State filed the state court record in paper. (State Court Record, ECF No. 7.)

witness from the FBI Laboratory had presented hair comparison testimony 'containing erroneous statements' at the trial." (*Wilcox v. State*, No. CUMCD-CR-2015-05036 (Unified Criminal Docket, Cumberland Cty., Apr. 7, 2017), Order.)[2] The court noted that Petitioner's "[i]dentity was the major issue at trial . . . ." (*Id.* at 5.) The court concluded that other evidence that established Petitioner's identity as the perpetrator was "sufficiently compelling that [Petitioner] has not met his burden of proving that he should be granted post-conviction relief" on the basis of the new evidence concerning the hair comparison testimony. (*Id.* at 5, 13.) The Maine Law Court denied discretionary relief under 15 M.R.S. § 2131(1), M. R. App. P. 19. (*Wilcox v. State*, No. Cum-17-160 (Me. June 7, 2017).)

Petitioner essentially contends in his section 2254 petition that the state court decision was either contrary to, or involved an unreasonable application of, federal law, pursuant to 28 U.S.C. § 2254(d)(1).[3] The State urges the Court to deny the section 2254 petition. (Response, ECF No. 5 at 6.)

---

[2] References to "order" in this recommended decision are to the state court's post-conviction order of April 7, 2017, unless otherwise indicated. (*Wilcox v. State*, No. CUMCD-CR-2015-05036 (Unified Criminal Docket, Cumberland Cty., Apr. 7, 2017), Order.)

[3] Title 28 U.S.C. § 2254(d) addresses claims that were adjudicated on the merits in state court and states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

After a review of the section 2254 petition, the State's response to the petition, and the record, I recommend the Court deny Petitioner's request for relief, and dismiss the petition.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner did not appeal from the conviction. The Sentence Review Panel of the Law Court denied Petitioner's request for review of the sentence. (*State v. Wilcox*, No. SRP-96-103, Docket Record.)

The Superior Court denied Petitioner's first state court petition following an evidentiary hearing. *Wilcox v. State*, No. PORSC-CR-1997-00590 (Me. Super. Ct., Cumberland Cty., June 11, 2004), Docket Record at 2.) The State represents that Petitioner did not file a request for discretionary review by the Law Court. (Response at 3.) The State also asserts that the section 2254 petition "does not raise any grounds pertaining to the allegations raised in the first state petition for post-conviction review . . . ." (Response at 3 n.1.)

Petitioner's second state court petition, filed in 2015, was based on the same underlying facts he asserts in his section 2254 petition, namely that the trial testimony of a Federal Bureau of Investigation special agent "exceeded the limits of science by overstating the conclusions that may appropriately be drawn from a positive association between evidentiary hair and a known hair sample." (May 5, 2015, Letter, ECF No. 1-3 at 2; *Wilcox v. State*, No. CUMCD-CR-2015-05036 (Cumberland Cty.), Attachment to Petition for Post-conviction Review.)

In its May 5, 2015, letter and accompanying documents, the Department of Justice identified three possible ways in which the testimony or report presented exceeded the limits of science.[4] (Letter, ECF No. 1-3 at 3.) One of the documents was a March 16, 2015, letter from the FBI to the Innocence Project and the Microscopic Hair Comparison Analysis Review Team. (*Id.* at 5.) The letter stated in relevant part:

> The examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association. This type of testimony exceeds the limits of the science.

(*Id.*)[5]

Petitioner, represented by appointed counsel, filed an amended state court petition in May 2016. (Docket Record at 1-2, Amended Petition.) In the amended petition, Petitioner argued he had a right to a new trial as to the convictions related to one or possibly two of the victims, based on the flawed FBI hair comparison analysis (Ground 1); he also claimed ineffective assistance of trial counsel based on counsel's failure to move to sever the charges regarding one of the victims (Ground 2); and he alleged ineffective assistance

---

[4] The May 5, 2015, letter, from the United States Department of Justice to the prosecutor in Petitioner's underlying criminal case, was attached to Petitioner's second state court petition. (*Wilcox*, No. CUMCD-CR-2015-05036, Attachment to Petition for Post-conviction Review.) The May 5 letter stated that it contained supporting documents: "A copy of the documents upon which our determination is based, specifying which of the three error types were identified, is enclosed." (*Id.* at 2.) Attached to Petitioner's section 2254 petition is a letter, dated May 20, 2015, from Special Counsel to Petitioner. (May 20, 2015, Letter, ECF No. 1-3 at 1.) The May 20 letter referred to an enclosure, which it appears was the May 5 letter and its enclosures. (*Id.* at 2-7.)

[5] A document entitled "FBI Microscopic Hair Comparison Analysis Review Evaluation Form" referred to the trial testimony of "Dizinno," which appears to be a misspelled reference to Joseph Dizinso, an FBI special agent who testified at trial. (*Id.*; Trial Tr. III at 21.) The special agent had testified about his laboratory examination of hair evidence. (Trial Tr. III at 32, 40, 42.)

4

of post-conviction counsel based on counsel's failure to argue in the first post-conviction petition an ineffective assistance claim for failure to sever (Ground 3). (Amended Petition at 10, 15, 17-18.) Finally, Petitioner challenged the sufficiency of the evidence for the convictions regarding one of the victims. (*Id.* at 10.)

Petitioner acknowledged that the claim regarding trial counsel's performance could have been raised in the first post-conviction review, but he argued that "in light of the new evidence in this case, that claim must be evaluated differently" than it would have been in the first post-conviction review. (*Id.* at 3.) The State did not challenge the timeliness of Ground 1, but it argued the ineffective assistance claim against trial counsel was not filed timely, and that the ineffective assistance claim against post-conviction counsel was not cognizable and was not filed timely. (Order at 1-2.) The court dismissed the ineffective assistance claims (Grounds 2 and 3) in August 2016, and it held an evidentiary hearing on Ground 1 in February 2017. (Docket Record at 3-4, Order at 2.) Following the hearing, the parties submitted written argument. (Docket Record at 4; Petitioner's Written Argument; Respondent's Post-Hearing Brief.)

In April 2017, the court denied Ground 1 of the amended petition. (Docket Record at 4, Order at 12-13.) The court noted that the sole issue on post-conviction review was whether Petitioner had demonstrated prejudice, i.e., "whether [Petitioner] has shown a reasonable probability that, absent the testimony of FBI Agent Joseph Dizinso that has now been called into question, the result of the proceeding would have been different." (Order at 2 (citing, *inter alia*, *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).)

After reviewing the evidence of identity at trial, the court noted the evidence of Petitioner's identity in the crimes against one of the victims was "not as strong" as the evidence that linked Petitioner to the other victims. The evidence the court concluded was not as strong consisted of (1) a photo array in which the victim identified Petitioner and another person as the possible assailants; (2) the victim's in-court testimony that "the assailant 'kind of looked like the guy sitting in the courtroom right now,'" but with some changes in his facial hair; and (3) the hair comparison testimony of Dizinso. (*Id.* at 9-10.) The court concluded, however, that "the evidence offered by the State regarding the three victims established a similar *modus operandi* leading to a strong inference that all the assaults were committed by the same person." (*Id.* at 10.)

> Most strikingly, during the same two-month period, all three victims were walking at night along one of the two main parallel streets one or two blocks apart . . . . All three were offered a ride by a person in a car with handicapped plates and handicapped controls on the steering wheel. All three saw that the driver had a brace on his right leg. All three were driven to a remote location and subjected to multiple assaults.

(*Id.* at 10-11) (footnote omitted).

The court noted evidence that "all three women had a gun held to their heads and were first compelled to perform oral sex on their assailant." (*Id.* at 11.) There were other common details as well, including that two of the victims, "testified that the assailant had difficulty maintaining an erection," and that "[a]ll three victims were eventually left by the side of the road with little or no clothing." (*Id.*) The court observed that Petitioner "was again cruising the same neighborhood in his vehicle in the late evening" when he was arrested four nights after the last assault. (*Id.*)

The court found there was "powerful evidence" of identity:

> The highly similar nature of the manner in which [the victims] encountered their assailant while walking in the same area of the City, the highly similar way they were lured into his vehicle and then taken to remote locations, the highly similar nature of the brutal sexual assaults themselves, and the evidence that all three attacks were perpetrated within a two-month period by a man with handicapped controls in his car and wearing a leg brace demonstrated that the sexual assaults were 'connected in time, purpose, and *modus operandi*' and were properly joined. *State v. Pierce*, 2001 ME 14, ¶ 16, 770 A.2d 630, *quoting State v. Bradley*, 414 A.2d 1236, 1238 (Me. 1980). More importantly, given the similarities, these were 'signature' crimes which strongly pointed to the conclusion that they were all committed by the same person. *See State v. Joubert*, 603 A.2d 861, 866 (Me. 1992). Wilcox's characteristics (including his leg brace and the handicapped controls on his car) and his possession of clothing and other items taken from two of the women who were sexually assaulted established that Wilcox was the assailant.

(*Id.* at 11-12.)

The court concluded Petitioner had not demonstrated prejudice because the evidence, "especially the signature-like nature of the three assaults, is sufficiently compelling" to establish Petitioner's identity as the perpetrator, and therefore, Petitioner was not entitled to relief. (*Id.* at 12-13.)

Petitioner requested discretionary review of the post-conviction decision. (*Wilcox v. State*, No. Cum-17-160, Docket Record, Memorandum in Support of Certificate of Probable Cause.) The memorandum addressed arguments regarding the admissibility of evidence at a new trial; Petitioner argued that his decision to challenge only the convictions concerning the crimes against one of the victims "alters the post-conviction court's analysis about the likelihood of a different verdict." (Memorandum in Support of Certificate of Probable Cause at 2-3.)

7

The Law Court denied discretionary review. (*Wilcox*, No. Cum-17-160, (Me. June 7, 2017), Order Denying Certificate of Probable Cause.)

Petitioner asserts he placed his section 2254 petition in the prison mailing system on August 16, 2017. (Petition at 15.)

## II. DISCUSSION

Petitioner's state court post-conviction claim was based principally on his argument that he was prejudiced because the evidence in support of the convictions at issue on post-conviction was insufficient in the absence of the hair comparison testimony.[6] (Amended Petition at 8.)

"Sufficiency claims are generally evaluated under § 2254(d)(1) and we look to 'whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law.'" *O'Laughlin v. O'Brien*, 568 F.3d 287, 298 (1st Cir. 2009) (footnote omitted) (quoting *Hurtado v. Tucker*, 245 F.3d 7, 15

---

[6] Petitioner did not allege in his state court petition, nor is there any indication in the record, that the State knowingly introduced false testimony at trial when it offered the hair comparison testimony; Petitioner also did not assert any corresponding written argument after the post-conviction hearing. (Amended Petition at 8-10; Petitioner's Written Argument.) Therefore, although the State cites *Napue v. Illinois*, 360 U.S. 264 (1959), in support of its request for dismissal (Response, ECF No. 5 at 4 & n.2), the State is correct that *Napue* is not directly applicable. *See Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (noting that, under *Napue*, "[d]ue process prohibits the State's 'knowin[g] use [of] false evidence,' because such use violates 'any concept of ordered liberty'") (quoting *Napue*, 360 U.S. at 269); *United States v. Vega*, 813 F.3d 386, 391 (1st Cir. 2016) ("*Napue* prohibits prosecutors from knowingly presenting false evidence, including false testimony, to the jury. This prohibition applies even if the government does not solicit the false testimony and merely fails to correct it.") (citing, *inter alia*, *Napue*, 360 U.S. at 269-70); *United States v. Clarke*, 442 F. App'x 540, 544 (11th Cir. 2011) (per curiam) ("To succeed on a *Napue* claim, the defendant must establish that the witness committed perjury. Simply showing a memory lapse, unintentional error, or oversight by the witness is insufficient.") (citing *United States v. Bailey*, 123 F.3d 1381, 1395-96 (11th Cir. 1997)).

(1st Cir. 2001)).[7] When a state court has adjudicated the prisoner's federal claim on the merits, the statutory standard of review under section 2254(d) is deferential to the state court. *Kernan v. Hinojosa*, --- U.S. ---, ---, 136 S. Ct. 1603, 1604 (2016) (per curiam); *Pena v. Dickhaut*, 736 F.3d 600, 603 (1st Cir. 2013) (noting the standard is "'highly deferential'" to the state court (quoting *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (per curiam)). The First Circuit has noted that the "question is not whether the state court opinion cited to any federal cases, but whether the opinion addresses a fairly raised federal issue." *Clements v. Clarke*, 592 F.3d 45, 54 (1st Cir. 2010).

> The constitutional right asserted in sufficiency of the evidence claims is set forth by the Supreme Court's decision in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson,* due process requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof−defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Id.* at 316, 99 S.Ct. 2781. More succinctly, the relevant test we

---

[7] The First Circuit has announced the following as some of the guidelines that may be used to determine whether a state court decision was objectively unreasonable under section 2254(d)(1):

(1) The focus of the inquiry is on the state court decision;

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to 'the totality of the evidence' in evaluating the state court's decision;

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

*Hurtado v. Tucker*, 245 F.3d 7, 18 (1st Cir. 2001). "The ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Id.* at 20.

9

take from *Jackson* is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781 (emphasis in original).

*O'Laughlin*, 568 F.3d at 299.[8]

"[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *see also King v. MacEachern*, 665 F.3d 247, 253-55 (1st Cir. 2011) (reviewing, in a section 2254 claim of insufficient evidence, the state law elements of the relevant crime of conviction).

In Petitioner's case, the state court, applying Maine law, concluded that the three sexual assaults were properly joined because they were "'connected in time, purpose, and *modus operandi*.'" (Order at 11-12 (quoting *Pierce*, 2001 ME 14, ¶ 16, 770 A.2d 630).)[9]

---

[8] In *McDaniel v. Brown*, 558 U.S. 120 (2010), the Supreme Court held that *Jackson v. Virginia*, 443 U.S. 307 (1979), did not apply when, "[r]ather than argue that the totality of the evidence admitted against him at trial was constitutionally insufficient, [the petitioner, who was the respondent before the Supreme Court] argued that some of the evidence should be excluded from the *Jackson* analysis." *McDaniel*, 558 U.S. at 126. In *McDaniel*, the state court had denied the petitioner's claim of ineffective assistance for failure to object to the admission of DNA evidence. *Id.* at 125-26. The district court permitted the federal habeas record to be supplemented with a report concerning DNA testimony at trial, although the report had not been filed in state court. *Id.* at 126. The district court "set aside the 'unreliable DNA testimony' and held that without the DNA evidence a reasonable doubt would exist in the mind of any rational trier of fact." *Id.* (quotation marks omitted). The district court granted habeas relief, and the Ninth Circuit affirmed. The Supreme Court reversed, noting both that "the Court of Appeals' discussion of the non-DNA evidence departed from the deferential review that *Jackson* and § 2254(d)(1) demand," *id.* at 132, and that "ample DNA and non-DNA evidence in the record adduced at trial supported the jury's guilty verdict under *Jackson* . . . ," *id.* at 136.

[9] The decision under review in this case is the Law Court's order denying a certificate of probable cause, because the Law Court's decision is the final state court adjudication on the merits. *See Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 45 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision:

The state court also concluded that Petitioner's identity as the perpetrator was established through signature evidence. (*Id.* at 12 (citing *Joubert*, 603 A.2d at 866 (concluding that "[t]he unusual bite marks . . . together with the similar physical characteristics and manner of death of both victims, are sufficiently idiosyncratic to support the reasonableness of the trial court's inference that they were killed by the same person") (quotation marks omitted)).

A review of the record reflects that the state court's conclusion, that the trial evidence, absent the hair comparison analysis, was sufficient to identify Petitioner as the perpetrator of the crimes challenged in the state court post-conviction review, was neither contrary to nor an unreasonable application of *Jackson*. *See Hurtado*, 245 F.3d at 18 (noting that even under a deferential standard of review, the federal court considers the "'totality of the evidence' in evaluating the state court's decision"). The state court pointed to a number of specific similarities among the assaults, which similarities were compelling evidence that the same individual was the perpetrator of each of the assaults. In short, the state court's findings, that the similarities in the circumstances of the assaults on the three victims were "powerful evidence" that Petitioner "was the assailant in all three cases,"

---

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, --- U.S. ---, ---, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

are supported by the record evidence. (Order at 12.) Petitioner, therefore, is not entitled to relief under section 2254(d)(1).[10]

---

[10] In *O'Laughlin v. O'Brien*, 568 F.3d 287, 298 n.14 (1st Cir. 2009), the First Circuit notes that sufficiency claims may also be analyzed under 28 U.S.C. § 2254(d)(2). However, Petitioner's claim need not be analyzed under section 2254(d)(2). Petitioner contends, as he did in his memorandum in support of a certificate of probable cause, that in a new trial, if the charges regarding one of the victims are the only charges tried, some evidence that was admitted at Petitioner's trial likely would be inadmissible. (Reply at 2; *Wilcox*, No. Cum-17-160, Memorandum in Support of Certificate of Probable Cause at 2-3.)

The admissibility issue in Petitioner's case is legal rather than factual, and therefore section 2254(d)(2) does not apply. The issue is procedurally defaulted to the extent it was part of Petitioner's untimely ineffective assistance claim for failure to move to sever the charges. "Federal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule.'" *Johnson v. Lee*, --- U.S. ---, ---, 136 S. Ct. 1802, 1803-04 (2016) (per curiam) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The rule that "a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on direct appeal" is one such rule. *Id.* at 1804. Because Petitioner failed to appeal from the judgment, and because he failed to raise the ineffective assistance claim on a timely basis in state court, he defaulted the claim in state court pursuant to an independent and adequate state rule.

Although the state court recognized that if the identity evidence regarding the victim in the convictions at issue in the post-conviction proceeding had not included the *modus operandi* evidence, there is a reasonable probability the outcome might have been different, the state court concluded there was no prejudice. (Order at 10.) To the extent the state court's conclusion that prejudice was lacking was based on a determination that significant *modus operandi* evidence would likely have been admissible in his separate trial, the state law evidentiary issue is not subject to review in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority.") (citations omitted).

Furthermore, to the extent the state court's conclusion that prejudice was lacking was based in part on a determination that the admission of *modus operandi* evidence in a separate trial would likely not result in a violation of Petitioner's federal due process rights, such a conclusion is not contrary to, or an unreasonable application of, clearly established federal law. *See* § 2254(d)(1); *Estelle*, 502 U.S. at 70 (holding that the admission of prior injury evidence, which was relevant to the issue of criminal intent, did not violate due process); *Dowling v. United States*, 493 U.S. 342, 345, 352-53 (1990) (holding that testimony, offered in part on the issue of the petitioner's identity, concerning an alleged crime of which the petitioner had been acquitted, did not violate due process, particularly in light of the limiting instructions given at trial).

## III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases, and I recommend the Court deny relief and dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of May, 2018.